**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Civil Action No. 22-cv-00836-RM-MEH

DETLEV HELMIG,

    Plaintiff,

v.

THE UNIVERSITY OF COLORADO BOARD OF REGENTS, a body corporate;
PHILIP DISTEFANO, in his official capacity as Chancellor of the University of Colorado-Boulder;
GREGORY BROWN,
DEBBIE CHAPMAN,
TERRI FIEZ,
MELANIE MARQUEZ PARRA,
GIFFORD MILLER,
CHRYSTAL POCHAY,
STEVE SMITH,
ERIC THOMPSON,
MERRITT TURETSKY, in their individual capacities; and
GLEN GALLEGOS,
HEIDI GANAHL,
IRENE GRIEGO,
CHANCE HILL,
JOHN KROLL,
SUE SHARKEY,
LINDA SHOEMAKER, and
LESLEY SMITH, in their individual capacities as members of the University of Colorado Board of Regents;

    Defendants.

_____

**ORDER**
_____

    This lawsuit is before the Court on the Recommendation of United States Magistrate Judge Michael E. Hegarty (ECF No. 56) to grant in part and deny in part Defendants' Motions to

Dismiss (ECF Nos. 31, 34). Defendants Gallegos, Ganahl, Greigo, Hill, Kroll, Sharkey, Shoemaker, and Smith (the "Regent Defendants") and Plaintiff filed Objections to Recommendation (ECF Nos. 57, 58) which have been fully briefed (ECF Nos. 59, 61, 63, 64). For the reasons below, both sets of Objections are overruled in part and sustained in part, and the Recommendation is accepted in part and rejected in part.

I.   **LEGAL STANDARDS**

   A.   **Review of a Magistrate Judge's Recommendation**

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

   B.   **Dismissal under Fed. R. Civ. P. 12(b)(6)**

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). To defeat a motion to dismiss, the complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

### C. Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018); *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Id.* (quotation omitted).

## II. BACKGROUND

No party objected to the magistrate judge's recitation of the relevant factual allegations, which the Court adopts in full but abbreviates here. Plaintiff joined the University of Colorado-Boulder ("CU") in 1995 and had been an associate research professor at the Institute of Arctic and Alpine Research ("INSTAAR") for more than fifteen years in 2020, when he was fired. (ECF No. 56 at 2.)

3

For several years during his employment, Plaintiff secured a contract on CU's behalf with a German governmental agency for air monitoring work until the agency declined to renew the contract. (*Id.* at 5.) In addition, Plaintiff was contacted by the City of Longmont about another potential contract for air quality studies that never materialized. (*Id.* at 5-6.) While employed by CU, Plaintiff founded Boulder Atmosphere Innovation Research LLC ("Boulder A.I.R."). (*Id.* at 5.)

Prior to his termination, Plaintiff voiced his concerns that CU and INSTAAR were overbilling the federal government by mischaracterizing project costs. (*Id.* at 4.) He complained first to Defendant Pochay, INSTAAR's Financial and Accounting Program Manager, and later to Defendant Miller, INSTAAR's then-Acting Director. (*Id.*) Because Defendant Pochay disagreed with him, Plaintiff alleges, she instituted a campaign of retaliation against him that involved Defendants impeding his ability to perform his research, conducting a sham investigation into his conduct, publicly disparaging his reputation, and ultimately firing him (*Id.* at 4-5.)

Plaintiff contends that Defendant Pochay's allegations against him prompted Defendant Brown, Fiscal Compliance Analyst in the CU Controller's Office, to order an investigation by Defendant Chapman, Senior Audit Manager of Investigations. (*Id.* at 7.) Defendant Chapman authored a report, overseen by Defendants Steve Smith, Director of Investigations for the Internal Audit Department, and Brown. (*Id.*) Defendant Thompson, Senior Audit Manager for the Internal Audit Department, briefly discussed the matter with Plaintiff. (*Id.*) He and Defendant Ponchay contributed to the report as well. (*Id.*)

4

Defendants Turetesky, Director of INSTAAR, and Miller delivered a Notice of Termination to Plaintiff in April 2020. (*Id.*) It was signed by Defendants Fiez, Vice Chancellor for Research and Innovation and Dean of the Institutes for CU-Boulder, and Miller. (*Id.*) The Notice provides the following grounds for Plaintiff's termination:

    a.    [Plaintiff's] outside personal and financial interests had negatively impacted his personal judgment and compromised his professional "loyalty" to CU;

    b.    He was not fully cooperative nor transparent with CU officials about his work for Boulder A.I.R.; and

    c.    He intentionally diverted CU resources (including contract opportunities).

(*Id.*) According to Plaintiff, Defendants knew these reasons were demonstrably false. (*Id.*)

Plaintiff contends that his firing violated CU polices requiring that faculty holding five-year appointments be fired only for cause and after being given an opportunity to be heard. (*Id.* at 2.) He contends that the Notice of Termination was deficient because it (1) gave no indication that his dismissal had been approved by any higher authority within CU or its Board of Regents; (2) gave him no advance notice of his termination; (3) failed to identify permissible grounds for dismissal; (4) was issued without giving him a prior opportunity to be heard; and (5) failed to inform him of his right to a hearing before the Privilege and Tenure Committee. (*Id.* at 8-9.) He further contends that the Regent Defendants knew about the relevant circumstances pertaining to his termination but failed to intervene. (*Id.* at 9.)

Plaintiff also alleges that the Regent Defendants repeated falsehoods about his firing in publicly accessible correspondence. (*Id.* at 10.) For example, Defendant Parra, former Director of Communications and Chief Spokesperson for CU, responded to media inquiries by stating that Plaintiff had "failed to maintain the required degree of daylight between publicly funded

5

research efforts and his own for-profit business." (*Id.*) Defendants Turetsky and Miller allegedly made similar statements to the National Science Foundation ("NSF"), a federal agency that was the source of much of the funding for Plaintiff's work. (*Id.*)

CU subsequently commissioned an additional report and audit about Plaintiff's termination, which Plaintiff contends is replete with falsehoods and intentionally misleading statements. (*Id.*) Various Defendants allegedly oversaw, contributed to, or ratified the report, which was published to the media. (*Id.*)

Plaintiff filed his initial Complaint in April 2022, naming as Defendants the Board of Regents of the University of Colorado, a body corporate (the "Board of Regents"); INSTAAR; and twenty-four individuals, sued in their individual and official capacities. (ECF No. 1 at 1.) Two months later he filed an Amended Complaint, adding as Defendants nine individual members of the Board of Regents, sued in their individual capacities, and Defendant DiStefano, Chancellor of the University of Colorado-Boulder, sued in his official capacity, while removing more than a dozen individual Defendants and INSTAAR.[1] (ECF No. 7 at 1.)

Plaintiff asserts the following claims: (1) deprivation of property interest without due process of law against Defendant DiStefano, in his official capacity, and the Regent Defendants and other individual Defendants (the "Non-Regent Defendants"), except Defendant Parra, in their individual capacities; (2) deprivation of liberty interest without due process of law against Defendant DiStefano, in his official capacity, and the Regent Defendants and Non-Regent

---

[1] The remaining individuals named as Defendants in the Amended Complaint are sued solely in their individual capacities, and three of them of since been dismissed from the case. (*See* ECF Nos. 50, 62.) The caption of the Amended Complaint names as a Defendant "the University of Colorado Board of Regents" instead of "Board of Regents of the University of Colorado," which was how the entity was named in the original Complaint. (*See* ECF Nos. 1, 7.)

Defendants, except Defendant Feiz, in their individual capacities; (3) breach of contract against the Board of Regents, in its official capacity; and (4) promissory estoppel against the Board of Regents, in its official capacity.

Both the Regent Defendants and the Non-Regent Defendants filed Motions to Dismiss (ECF Nos. 31, 34), which were referred to the magistrate judge for a Recommendation. After they were fully briefed (ECF Nos. 48, 51), the magistrate judge held a hearing before issuing the Recommendation.

As a threshold matter, the magistrate judge rejected the Regent Defendants' argument that the claims against them were time-barred because the Amended Complaint was filed outside the statute of limitations. Although these Defendants were not named in the original Complaint, the magistrate judge determined that the Amended Complaint "relates back" to the original Complain under Fed. R. Civ. P. 15(c).

The magistrate judge turned next to Plaintiff's due process claims. Plaintiff's property interest claims turn on whether he had a protected property interest in his position at CU. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). In support of their positions, Plaintiff and the Regent Defendants cited various policy documents that the magistrate judge found were extrinsic to the Amended Complaint and therefore not properly considered at this stage. On the current record, the magistrate judge could not determine whether Plaintiff had alleged a protected property interest, and therefore recommended dismissing these claims without prejudice. The magistrate judge further concluded that the property interest claims against the Regent Defendants were subject to

dismissal because Plaintiff failed to allege facts which could plausibly support a claim that these Defendants were personally involved in a deprivation of his property rights. Nonetheless, the magistrate judge found this provided an additional basis to dismiss these claims without prejudice.

Plaintiff's liberty interest claims turn on whether Defendants published false statements impugning his good name in the course of his termination and such statements foreclosed other employment opportunities. *See Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). The magistrate judge recommended denying the Regent Defendants' Motion because "Plaintiff has plausibly alleged, albeit barely, that the Regents publicly disseminated the purportedly false statements." (ECF No. 56 at 23.)

The magistrate judge also recommended granting the Non-Regent Defendants' Motion because they were entitled to qualified immunity on Plaintiff's liberty interest claims. With respect to Defendants Miller and Turetsky, the magistrate judge found there was no clearly established law that would have put them on notice that their communications to NSF violated Plaintiff's rights. The magistrate judge also determined that, much like with the press secretary in *McDonald v. Wise*, 769 F.3d 1202, 1251 (10th Cir. 2014), there were no allegations that Defendant Parra was in a position to provide Plaintiff with process in the form of a name-clearing hearing, and therefore she was entitled to qualified immunity as well. And with respect to the individual Defendants allegedly involved in creating the investigative report, the magistrate judge concluded that they were entitled to qualified immunity because they were not alleged to have shared or disseminated the report.

The magistrate judge concluded that Plaintiff's claims against Defendant DiStefano were barred to the extent Plaintiff was seeking monetary damages because he was being sued solely in his official capacity.

The magistrate judge also concluded that in the absence of a protected property interest, Plaintiff's breach of contract and promissory estoppel claims against the Board of Regents necessarily failed as well. The magistrate judge recommended dismissing these claims without prejudice.

Finally, the magistrate judge noted that, pursuant to the Local Rules of Practice, Plaintiff would need to file a separate motion for leave to amend if he wanted to revive any of his dismissed claims. *See* D.C.COLO.LCivR 7.1(d).

### III. ANALYSIS

No party objected to the magistrate judge's Recommendation to dismiss Plaintiff's liberty interest claims against Defendants Brown, Chapman, Steven Smith, Thomson, and Pochay on qualified immunity grounds or his claims for monetary damages against Defendant DiStefano. The Court discerns no error with respect to the magistrate judge's handling of these claims, and they are dismissed with prejudice.

#### A. Regent Defendants' Objections

The Regent Defendants raise two Objections to the Recommendation. First, they argue that the magistrate judge erred in concluding that the Amended Complaint "relates back" to the filing of the original Complaint for purposes of applying the statute of limitations. On this issue, the Court is not persuaded.

The parties do not dispute that the original Complaint was filed within the applicable statute of limitations and that the Amended Complaint was filed after the applicable limitations period. As pertinent here, an amendment to a pleading "relates back" to the date of the original pleading if it asserts a claim "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see generally Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 545 (2010). If the amendment changes the party or the naming of the party against whom a claim is asserted, an amendment "relates back" when the party to be brought in "received such notice of the action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15 (c)(1)(C)(i), and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15 (c)(1)(C)(ii).

The Court has little trouble finding that the claims asserted against the Regent Defendants in the Amended Complaint arise out of Plaintiff's termination—the same conduct, transaction, or occurrence upon which the original Complaint is based. "As long as there is a factual nexus between the original and amended complaints, the amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Benton v. Bd. of Cnty. Comm'rs*, No. 06-cv-01406-PSF-MEH, 2007 WL 4105175, at *3 (D. Colo. Nov. 14, 2007) (unpublished); *see also Kidwell v. Bd. of Cnty. Comm'rs*, 40 F. Supp. 2d 1201, 1217 (D. Kan. 1998) ("As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts."). Although there are few allegations directed at "the Regents" in the original Complaint,

10

Plaintiff's claims in the Amended Complaint pertaining to the Regent Defendants clearly pertain to the same underlying occurrence. *See Krupski*, 560 U.S. at 545.

The Court also finds that the original Complaint provided notice to the Regent Defendants about the nature of this case such that they will not be prejudiced by having to defend against Plaintiff's claims on the merits. *See id.* Indeed, "Colorado law requires the University to defend against and indemnify the Regents for any suits against them arising under the performance of their duties as regents," *Churchill v. Univ. of Colo.*, 285 P.3d 986, 998 (Colo. 2012), and CU was already defending the case when the Amended Complaint was filed.

The issue of whether the Regent Defendants knew or should have known that this action would be brought against them but for a mistake concerning their identity presents a somewhat closer issue. The relevant inquiry under these circumstances is focused on "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Krupski*, 560 U.S. at 554. The Regent Defendants cite the description of the Board of Regents on the caption of the original Complaint as "a body corporate" as a basis for its understanding that Plaintiff was not bringing claims against them in their individual capacities. But the Court finds that caption is not dispositive here, particularly when the bold-font, capitalized phrase "IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES" appears at the end of the list of Defendants. (ECF No. 1 at 1.) Nor is this a case where these Defendants had reason to believe their omission from the original Complaint was intentional. *Cf. Barker v. Utah Dep't of Env't Quality*, No. 21-4024, 2022 WL 259955, at *2 (10th Cir. Jan. 28, 2022) (unpublished).

11

Although the Regent Defendants were not individually named in the original Complaint and the inartful formatting of the caption creates some ambiguity, the Court finds that the Regent Defendants had at least constructive notice that they were implicated in this lawsuit. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) ("[A] party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."). This is so even though some of the Regent Defendants did not serve on the Board when the lawsuit was filed, as they should have known they could be subject to liability for their roles as members of the Board even after their terms ended. Further, as set forth in the Advisory Note pertaining to the 1966 Amendment of Fed. R. Civ. P. 15, changes to the Rule were intended to make it easier for private parties suing the government to amend their complaints to name the proper defendant in cases when they had not done so initially. That is analogous to the circumstance presented here, and the Court finds it would be inapt to characterize the Amended Complaint as a new proceeding vis-a-vis the Regent Defendants. Rather, the Court finds that the judicial preference for resolving disputes on their merits outweighs the interests of these Defendants that are protected by the statute of limitations. *See Krupski*, 560 U.S. at 550. Thus, the Regent Defendants' first Objection is overruled.

The Regent Defendants' second Objection is that the magistrate judge erred by concluding that the Amended Complaint alleges sufficient facts to show they were personally involved in depriving Plaintiff of a liberty interest. On this issue, the Court agrees with the Regent Defendants.

"A public employee has a liberty interest in his good name and reputation as they relate to his continued employment." *McDonald*, 769 F.3d at 1212. To state a claim against the

Regent Defendants, Plaintiff must allege that (1) they made statements that impugn his good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements were made during the course of termination and foreclosed other employment opportunities; and (4) the statements were disclosed publicly. *See id.*

However, the Complaint does not contain even one specific statement purportedly made by a Regent Defendant. The Complaint alleges instead that former Non-Regent Defendants Moore and Draper made statements about Plaintiff having violated university policy. (*See, e.g.*, ECF No. 7, ¶¶ 111, 115.) It then goes on to allege in a conclusory manner that "[t]he Regents, personally, repeated these falsehoods on numerous occasions, in publicly accessible correspondence." (*Id.* at ¶ 118; *see also id.* at ¶ 132 ("Again, on several occasions, in publicly accessible correspondence, the Regents wrote that the Investigative Report findings would 'confirm' their decision to terminate [Plaintiff].").) These allegations fall well short of stating a claim. As explained in *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008):

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state.

The requisite causal connection is satisfied when a defendant sets in motion a series of events that the defendant should have known would cause others to deprive the plaintiff of his constitutional rights. *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). But here, in addition to lacking any allegations about what exactly the Regent Defendants said, the Complaint also lacks allegations showing that they overtly or impliedly adopted defamatory accusations made by others or that they set in motion a series of events that caused Plaintiff to be fired.

13

*Cf. Melton v. City of Okla. City*, 928 F.2d 920, 931 (10th Cir 1991). Accordingly, the Court sustains the Regent Defendants' Motion in this respect and dismisses Plaintiff's liberty interest claims against them.

### B.     Plaintiff's Objections

Plaintiff objects to the magistrate judge's determination that the Complaint does not adequately plead he had a protected property interest in or contractual right to his continued employment. Plaintiff points out that while he did not attach the relevant policies to his Complaint, he did cite them, and he attached them to his Response to the Motions to Dismiss. In their Response to Plaintiff's Objections, Defendants continue to rely on policies that were not referenced in the Complaint and that the magistrate judge declined to consider.

The Court agrees with Plaintiff that his allegations are sufficient to plead a protected property interest. For example, the Complaint alleges that Plaintiff held a five-year appointment as an associate research professor at the time he was fired. (*Id.* at ¶ 95.) The Complaint further alleges that CU adopted Regent Law 5, provisions of which strictly regulate the dismissal of faculty on term appointments. (*See, e.g.*, ECF No. 7, ¶¶ 96, 97.) Although Defendants point to other competing policies that are not referred to in the Complaint in disputing this issue, from the Court's perspective the issue is better suited for resolution at the summary judgment stage, when all the relevant policies and documents can properly be considered. Accordingly, the Court sustains this Objection and for present purposes declines to dismiss Plaintiff's claims premised on his protected property interest. The same rationale precludes the dismissal of Plaintiff's claims against the Board of Regents.

Plaintiff also objects to the magistrate judge's determination that he failed to allege facts which could plausibly support a claim that the Regent Defendants were personally involved in a deprivation of his property rights. However, the Court agrees with the magistrate judge's analysis of this issue.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Generalized allegations against "Defendants" or "Regents" are insufficient to state a claim against government actors sued in their individual capacities. *See Robbins*, 519 F. 3d at 1250. Rather, to establish a claim against the Regent Defendants based on their supervisory responsibilities, Plaintiff must demonstrate an "affirmative link" between them and the violation of his rights consisting of three related prongs: (1) personal involvement; (2) causation; and (3) state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Here, Plaintiff's claim is premised on the notion that these Defendants were personally involved in causing a deprivation of his property right because they failed to fulfill their legal obligations to him. (*See* ECF No. 58 at 10.) But there are no allegations showing that the Regent Defendants caused Plaintiff's termination or were even involved with the decision to fire him. Nor do the allegations show or explain how these Defendants could have intervened in this matter. Thus, the allegations do not show that they set in motion a series of events they knew or reasonably should have known would result in a deprivation of Plaintiff's rights. *See Poolaw v. Marcantel*, 565 F.3d 721, 733 (10th Cir. 2009); *see id.* at 732 ("[A] supervisory relationship alone is insufficient for liability under § 1983."). Therefore, the Court overrules Plaintiff's

15

Objection as to the Regent Defendants' lack of personal involvement in his firing, and the liberty interest claims against these Defendants are dismissed with prejudice.[2]

Finally, Plaintiff objects to magistrate judge's determination that Defendants Miller, Turetsky, and Parra are entitled to qualified immunity. With respect to Defendants Miller and Turetsky (Acting Director and Director of INSTAAR, respectively), Plaintiff contends the magistrate judge erred by concluding there is no clearly established law that would have informed them that their communications with NSF violated the Constitution, regardless of whether those communications are deemed intra- or inter-governmental. However, he cites no binding authority supporting his view that the unlawfulness of these communications should have been apparent to these Defendants. Instead, he contends that it should have been obvious to these Defendants that these communications were inter-governmental because they were between state and federal governments and therefore necessarily constituted publications or public disclosures for purposes of Plaintiff's liberty interest claims. However, the United States Court of Appeals for the Tenth Circuit has pointed out in a recent, albeit unpublished, case that "[w]e have not . . . precisely defined the scope of intra-governmental disseminations." *Alcorn v. La Barge*, 784 F. App'x 614, 619 (10th Cir. 2019) (unpublished).

For purposes of qualified immunity, a right is clearly established if its contours are sufficiently clear that reasonable officials would understand that what they are doing violates that right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In the absence of clear authority on this issue, the Court cannot conclude that proper characterization of the communications at issue

---

[2] The Non-Regent Defendants did not seek dismissal of Plaintiff's property interest claims on qualified immunity grounds. (*See* ECF No. 34.)

is beyond debate. Thus, the Court overrules Plaintiff's Ojection pertaining to Defendants Miller and Turetsky and accepts the magistrate judge's conclusion that they are entitled to qualified immunity.

With respect to Defendant Parra, Plaintiff contends the magistrate judge erred by concluding she is entitled to qualified immunity because, as a mere spokesperson for CU, she was not in a position to provide Plaintiff with due process in the form of a name-clearing hearing. In reaching this conclusion, the magistrate judge relied on *McDonald*, 769 F.3d at 1209, a case in which the Denver mayor's press secretary informed news reporters that the plaintiff had been terminated because of serious allegations of misconduct. In *McDonald*, the court concluded that the press secretary was entitled to qualified immunity as to the plaintiff's due process claims because "she was in no position to provide [him] the process he was due, a name-clearing hearing." *Id.* at 1215.

The Court is not persuaded by Plaintiff's attempt to distinguish Defendant Parra's conduct from that of the press secretary in *McDonald* on the basis that the former exaggerated false allegations against him whereas the latter merely repeated damaging allegations against the plaintiff in that case. Moreover, even if Plaintiff is correct that *McDonald* was decided incorrectly, it is nonetheless binding on this Court for purposes of determining Defendant Parra's entitlement to qualified immunity. Accordingly, the Court overrules Plaintiff's Objection pertaining to Defendant Parra as well.

## IV. CONCLUSION

As set forth in this Order, the Regent Defendants' Objections (ECF No. 57) are OVERRULED IN PART and SUSTAINED IN PART, and their Motion to Dismiss (ECF No. 31) is GRANTED. Plaintiff has no remaining claims against these Defendants.

Plaintiff's Objections are SUSTAINED IN PART and OVERRULED IN PART, and the Non-Regent's Motion to Dismiss (ECF No. 34) is GRANTED. The Court notes as well that Plaintiff has disavowed any claim for damages against Defendant DiStefano. (*See* ECF No. 58 at 16.) Plaintiff's property interest claims against these Defendants, except Defendant Parra, remain pending. Plaintiff's breach of contract and promissory estoppel claims against the Board of Regents, in its official capacity, remain pending as well.

The Recommendation (ECF No. 56) is ADOPTED IN PART as to the magistrate judge's recitation of the relevant factual allegations and the portions of its analysis which are consistent with the conclusions reached in this Order. Otherwise, to the extent the Recommendation is inconsistent with the conclusions in this Order, it is REJECTED.

DATED this 12th day of September, 2023.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge